UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| **JUSTIN MILES,** | ) |
| *Plaintiff,* | ) |
| | ) Civil Action No. 3:23-CV-14-GNS |
| v. | ) |
| **FORD MOTOR COMPANY** | ) |
| and | ) |
| **TINA MARACZ,** | ) |
| *Defendants.* | ) |

## AMENDED VERIFIED COMPLAINT

Comes now the Plaintiff, Justin Miles ("Mr. Miles" or "Plaintiff"), by and through counsel, and for his Complaint against Ford Motor Company. ("Ford") and Tina Maracz ("Ms. Maracz"), as a superintendent for Defendant Ford (collectively, the "Defendants") and states as follows:

### JURISDICTION AND VENUE

1. Plaintiff, Mr. Miles, is a resident of Louisville, Kentucky and as such, is a resident of Jefferson County, Kentucky.

2. Defendant, Ford Motor Company, is a Michigan company but submits itself to the jurisdiction of the Commonwealth of Kentucky under KRS 454.210, by transacting any

business in the Commonwealth. Specifically, Defendant operates a facility in Louisville, Kentucky.

3. Defendant, Ms. Maracz, is an individual who is believed to be a resident of Kentucky.

4. Mr. Miles' cause of action arises out of events that took place in Louisville, Kentucky.

5. Mr. Miles' damages exceed the threshold requirement of five-thousand dollars ($5,000) and, therefore, this Court has proper jurisdiction over the matter.

6. Plaintiff's causes of actions arise under the Kentucky Civil Rights Act, as codified in KRS Chapter 344. As such, pursuant to KRS § 344.450 this action must be and is being brought in the Circuit Court in the county in which the alleged action arose.

## FACTUAL ALLEGATIONS

1. Plaintiff, Mr. Miles, is a current African American employee of the Ford Motor Company Truck Plant in Louisville, Kentucky, where he is employed as an Assembly Line Technician.

2. Plaintiff was hired on April 11, 2016.

3. Plaintiff reported to Tina Maracz (Ms. Maracz), a white woman, who is now a former superintendent of the Ford Truck Plant where Plaintiff works.

4. Ms. Maracz was recently terminated from her position.

5. Ms. Maracz routinely singled out Plaintiff by yelling at him and criticizing him openly in front of his coworkers.

6. In addition to this verbal harassment, Ms. Maracz would slap Plaintiff on his gluteal area on more than one occasion as well as rubbing his back, humiliating Plaintiff in the process.

7. Part of the verbal harassment by Ms. Maracz included calling Plaintiff, "boy" routinely.

8. In addition to calling Plaintiff "boy", Ms. Maracz routinely called Plaintiff "black ass". Plaintiff notes multiple occasions where Ms. Maracz told him to "get your black ass up on the line."

9. Ms. Maracz was also witnessed telling other co-workers that she would "stick [her] foot up their Puerto-Rican ass."

10. Plaintiff notes that his harassment began on or around March 15, 2017 when Ms. Maracz told Plaintiff that, "if you don't want to work here, you can go work at McDonald's."

11. Ms. Maracz made this statement in front of another supervisor and multiple coworkers.

12. In 2018, Plaintiff came in to work on an overtime day to do a job that he was qualified to do. Ms. Maracz told him to go home as she did not want him to work.

13. Plaintiff then went to the union steward to complain and was eventually allowed to work his shift.

14. After this incident, another supervisor was told to sign a paper that would disqualify Plaintiff from working in the position that he had worked on the overtime day, making him ineligible for that overtime.

15. On or about October 20, 2018, Plaintiff was told by Ms. Maracz that he would no longer be on quality control, citing an incident in which she claims Plaintiff "didn't check any parts" on one of his shifts for quality control.

16. Plaintiff asked for documentation for this event as it would have been impossible for him to do this without parts being rejected.

17. Ms. Maracz told Plaintiff "No, I don't have to." Plaintiff then reported this incident to the Union Representative, Tony Bridgewater.

18. In 2019, a co-worker falsely claimed that Plaintiff had ran down to the line with his pants down and reported this to Ms. Maracz.

19. Rather than ask Plaintiff about the validity of this claim, she immediately opened an investigation despite instances of dismissing similar claims against Plaintiff's co-workers.

20. In another incident from 2019, Ms. Maracz asked Plaintiff to perform a job that he did not feel comfortable doing in that shift. Defendant responded by telling Plaintiff, "if you don't do it, you will never do it again."

21. Other employees have had similar conversations with Ms. Maracz and were allowed to return to that specific job again without incident. Instead, Ms. Maracz retaliated against Plaintiff and never allowed him to work that job again.

22. Ms. Maracz has also made it known multiple times that she did not respect the seniority of Plaintiff. On one occasion, Plaintiff's crew had started working twelve (12) hour shifts where those with highest seniority would be allowed to leave if anyone was to be dismissed.

23. On this first occasion, Ms. Maracz allowed a coworker with less seniority to clean up their station and leave early.

24. On a separate instance, Ms. Maracz let two (2) temporary employees leave the shift early and forced Plaintiff and another employee with seniority to stay and cover the work load.

25. During this time Ms. Maracz yelled at Plaintiff and repeatedly screamed that Plaintiff was "fucking" everyone on the line, and stood across the line from Plaintiff over and over to intimidate him.

26. In an incident on or around February of this year, Ms. Maracz threatened Plaintiff for walking away from their conversation by screaming "boy if you don't stop, you are going to end up in fucking labor."

27. After this incident, Ms. Maracz told one of Plaintiff's coworkers that she was "worried that [Plaintiff] was using the black card".

28. As a result of the treatment endured under Ms. Maracz, Plaintiff has had to be admitted to The Brook Hospital to be treated for depression and anxiety.

29. Plaintiff is still dealing with depression and anxiety and dreads coming to work, even with Ms. Maracz gone due to the embarrassment suffered for years under her supervision.

30. Despite numerous instances of Plaintiff complaining to union representation, Ms. Maracz was allowed to work for Defendant and continue this cycle of verbal abuse and physical harassment for at least the five years that Plaintiff worked under her at Ford.

31. Mr. Miles had to be admitted on two (2) occasions to The Brook Hospital for his depression and anxiety, when he returned to work Ms. Maracz would harass him for his time off. Plaintiff had to take a 20% pay cut to take time off in order to seek mental health care at The Brook

32. Since Ms. Maracz' termination, she has been replaced by 3 new supervisors that are being trained.

33. Mr. Miles' work area contains 3 stations with one press machine each. Despite there being other stations and machine operators, Mr. Miles has been under close watch by these new trainees.

34. Mr. Miles fears that these new supervisors are surveilling him to find a pretextual reason to fire him.

35. In early December 2022, nearly one week after the Verified Complaint was filed in Jefferson County Circuit Court, Mr. Miles was experiencing pain and was accompanied to

the medical department by a supervisor with the first name of Tom. Mr. Miles is unsure of this individual's last name.

36. On their way to the medical department, Mr. Miles and Tom engaged in a conversation about workplace safety as they observed workers weaving in and out of each other, and noting the dangers of leaving carts parked on the side of designated pathways.

37. Mr. Miles made the comment that he hates when people walk on the side of the road at night and how dangerous it was.

38. Supervisor Tom proceeded to tell Mr. Miles a story about how he "was just in [his] neighborhood and saw a big black guy walking down [his] street wearing a hoodie" and that Tom proceeded to call the police on this individual solely because "he did not think anyone should be in his neighborhood at that time."

39. These racially disparaging comments made Mr. Miles extremely uncomfortable and inferior because of his race.

40. After receiving a heating pad and Advil from the medical department, Mr. Miles was then accompanied back to his station by Supervisor Tom. As they exit the medical department, the supervisor begins making extremely inappropriate comments to Mr. Miles.

41. These comments include "Did you get a massage in there? I would have gotten a massage, you should have asked, she might have been a freak" and "you all could have gotten freaky in there, you never know."

42. These comments again left Mr. Miles extremely uncomfortable and apprehensive because he felt Tom was attempting to not only minimize Mr. Miles injuries, but also trying to set up Mr. Miles to say something inappropriate.

43. In January 2023, Mr. Miles had the opportunity to sign up for overtime that was triple pay.

44. Mr. Miles walked into his work station with two of his white coworkers at the exact same time.

45. The trainee supervisor arrived a few minutes later and informed Mr. Miles that because he was late, he was unable to work that day.

46. Mr. Miles, having walked in with his two white coworkers, was the only worker of the three that was precluded from working that day, despite having arrived at the same time as his similarly situated white coworkers.

47. On February 6, 2023, Mr. Miles was accused of wearing headphones under his ear protection, which would be a safety violation.

48. Despite the trainee supervisor offering no basis for these allegations, Mr. Miles was the only individual at his workstation who was interrogated about such conduct. None of Mr. Miles white coworkers were also stopped and questioned about violating this safety rule.

## COUNT I. DISRIMINATION BASED ON RACE

49. Mr. Miles hereby incorporates each and every allegation of paragraphs one (1) through forty-eight (48), as if fully set forth with particularity herein.

50. Pursuant to KRS § 344.040, it is unlawful for an employer to discriminate against any individual because of the individual's race, color, religion, national origin, sex, or age forty (40) and over.

51. Defendant is an employer pursuant to KRS § 344.030.

52. Mr. Miles is an adult African American male and is a member of a protected class.

53. Mr. Miles was qualified for the position that he held and has worked at Defendant for six years.

54. Mr. Miles was treated differently than similarly situated employees who are white. Mr. Miles was discriminated against based on his race on numerous occasions.

55. The instances of Ms. Maracz screaming at Defendant and being called "boy" and "black ass" made his job hard to complete, which his white co-workers did not have to struggle with.

56. When Plaintiff complained that he was not comfortable performing a certain task, Ms. Maracz and Ford did not let him do this task again, despite white co-workers being allowed to do so.

57. Plaintiff was purposefully misled by his supervisor about requirements for a promotion and thus was not promoted. As a result, Plaintiff did not apply for other promotional positions at that time because he was under the impression he was qualified for the promotion he applied for and would thus receive it.

58. Mr. Miles had to be admitted on two (2) occasions to The Brook Hospital for his depression and anxiety, when he returned to work Ms. Maracz would harass him for his time off. Plaintiff had to take a 20% pay cut to take time off in order to seek mental health care at The Brook

59. These actions taken by Defendant were due to Mr. Miles's race, are in violation of KRS § 344 and establish a *prima facie* case of discrimination against Defendant.

60. Mr. Miles, having shown that he was treated differently because of his race, to his detriment, has suffered, and will continue to suffer, monetary losses based on Defendant's actions.

### COUNT II. DISCRIMINATION BASED ON GENDER

61. Mr. Miles hereby incorporates each and every allegation of paragraphs one (1) through sixty (60) as if fully set forth with particularity herein.

62. KRS § 344.040(1)(a) makes it unlawful for an employer "[t]o fail or refuse to hire, or to discharge any individual, or otherwise discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's sex."

63. Defendant is an employer pursuant to KRS § 344.030.

64. Mr. Miles is an adult male and is a member of a protected class.

65. Mr. Miles was qualified for the position he held, as he has been employed there for over six (6) years.

66. Mr. Miles was treated differently than similarly situated employees who were female.

67. Mr. Miles faced physical harassment from Ms. Maracz through slapping of his gluteal area and back rubbing. Ms. Maracz did not do this with other female employees.

68. Mr. Miles had to be admitted on two (2) occasions to The Brook Hospital for his depression and anxiety, when he returned to work Ms. Maracz would harass him for his time off. Plaintiff had to take a 20% pay cut to take time off in order to seek mental health care at The Brook.

69. Plaintiff was purposefully misled by his supervisor about requirements for a promotion and thus was not promoted. As a result, Plaintiff did not apply for other promotional positions at that time because he was under the impression he was qualified for the promotion he applied for and would thus receive it.

70. The actions taken by Defendant were due to Mr. Miles's gender, in violation of KRS § 344.040 and establish a *prima facie* case of gender discrimination against Defendant.

## COUNT III. DISCRIMINATION BASED ON DISABILITY

71. Plaintiff hereby incorporates each and every allegation contained in paragraphs (1) through seventy (70), as if fully set forth with particularity therein;

72. KRS § 344.040 states that it is unlawful for an employer to discriminate against an individual because they are a person qualified with a disability.

73. Plaintiff was an individual with a disability of severe anxiety and depression, and he is thus a member of a protected class.

74. Under the American Disability Act, an employer must not discriminate on the basis of a workers' disabilities; the ADA also requires employers to provide reasonable accommodations, including changes to the workplace or job, to allow employees with disabilities to do their jobs proficiently.

75. The adverse actions taken by Defendants were due to Mr. Miles's mental disability, and are in violation of KRS § 344.040, and establish a *prima facie* case for disability discrimination against the Defendants.

76. Mr. Miles had to be admitted on two (2) occasions to The Brook Hospital for his depression and anxiety, when he returned to work Ms. Maracz would harass him for his time off. Plaintiff had to take a 20% pay cut to take time off in order to seek mental health care at The Brook.

77. Ms. Maracz would not treat any other employees differently if they took time off for other reasons.

78. Mr. Miles, having shown that he was treated differently because of his disability, to his detriment, suffered and will continue to suffer monetary losses based on unemployment, humiliation, embarrassment, stress, and loss of income.

79. The actions taken by Defendant were due to Mr. Miles's disability, in violation of KRS § 344.040 and establish a *prima facie* case of disability discrimination against Defendant.

## COUNT IV. RETALIATION

80. Mr. Miles hereby incorporates each and every allegation of paragraphs one (1) through seventy-nine (79) as if fully set forth with particularity herein.

81. Pursuant to the KCRA, as codified in KRS Chapter 344, it is unlawful for an employer and its employees, agents, and/or representatives to retaliate against an individual because he has opposed a practice declared unlawful by KRS Chapter 344.

82. KRS § 344.280 (1) makes it unlawful for an employer or person to retaliate or discriminate in any manner against a person because she has opposed a practice declared unlawful by this chapter, or because she has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this chapter. A claim for unlawful retaliation requires the plaintiff to first establish a *prima facie* case of retaliation which consists of showing that: (1) she engaged in an activity protected by (the KCRA); (2) that exercise of her civil rights was known by the Defendant; (3) that, thereafter, the Defendant took an employment action adverse to the Plaintiff; and (4) there was a causal connection between the activity engaged in the Defendant employer's act. *Brooks v. Lexington-Fayette Urban Cty. Housing Authority*, 132 S.W.3d 790, 803 (Ky. 2004).

83. KRS § 344.030 defines "employer" for the purposes of KRS § 344.280 as "a person who has eight (8) or more employees within the state in each of twenty (20) or more calendar weeks" during either the same year as the alleged unlawful discrimination or during the preceding year. Defendant, Ford, is an employer pursuant to this statute.

84. KRS § 344.040 protects an employee from discrimination because of the individual's race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or nonsmoker.

85. Mr. Miles is a member of a class protected by KRS § 344 as an African American male. As such, he was engaged in a protected activity when he made complaints about Ms. Maracz to his union representative.

86. On two separate occasions, Mr. Miles made complaints to the area manager and plant manager, both above Ms. Maracz in authority, and both times his complaints were brushed off with no action taken against Ms. Maracz.

87. Defendant knew of Mr. Miles's exercise of his Civil Rights.

88. Defendant Maracz took materially adverse employment actions against Mr. Miles by routinely harassing him both vocally and physically, taking him off certain job positions, and ensuring that he could not regain those jobs.

89. In addition to this retaliation by Ms. Maracz, other supervisors treated Mr. Miles differently and even going so far as to avoid him after they had learned of his complaints against Ms. Maracz.

90. Since the termination of Ms. Maracz, Mr. Miles has been under close scrutiny and surveillance by three new trainee supervisors.

91. Based off of their interactions, Mr. Miles feels the racially and sexually disparaging comments made towards him are an attempt to get a terminable response out of him.

92. There is a causal connection between Mr. Miles losing his privileges at Ford and filing his complaints with union representatives.

93. Defendants' conduct violates KRS § 344.280, and Defendants should be held liable.

### COUNT V. HOSTILE WORK ENVIRONMENT

94. Mr. Miles hereby incorporates each and every allegation of paragraphs one (1) through ninety-three (93), as if fully set forth with particularity herein.

95. In Kentucky, to establish a *prima facie* case of hostile work environment, Plaintiff must show that (1) he is a member of a protected class; (2) he was subjected to unwelcome harassment regarding their protected class; (3) the harassment was based on the protected class; (4) the harassment had the effect of unreasonably interfering with his work performance by creating intimidating, hostile, or offensive work environment; and (5) the existence of respondent superior liability.

96. Mr. Miles, as an African American male, is a member of a protected class.

97. Mr. Miles was subjected to harassment from Ms. Maracz and was singled out due to his race and mental disability.

98. Mr. Miles was subjected to unwelcomed harassment on the basis of his race. Similarly situated Caucasian employees were not subjected to the same harassment and antics.

99. Since the termination of Ms. Maracz, Mr. Miles has been under close scrutiny and surveillance by three new trainee supervisors.

100. Based off their interactions, Mr. Miles feels the continued racially and sexually disparaging comments made towards him are an attempt to get a terminable response out of him.

101. The harassment unreasonably interfered with Mr. Miles's work performance by creating and/or condoning an intimidating, hostile, or offensive work environment.

102. Respondent superior liability theorizes that when one acts through the agency of another, he is himself acting and thus responsible for the acts of his agent. *Brooks v. Grams*, 289 S.W.3d 208, 211 (Ky. Ct. App. 2008). "When an agent fails in any duty which he owes a third party or the public generally, the principal is responsible for the future." *Smith v. Smith*, 333 S.W.2d 503, 504 (Ky. 1960). Under these circumstances, an employer is strictly liable for damages resulting from the tortious acts of his employees. *Patterson v. Blair*, 172 S.W.3d 361, 364 (Ky. 2005).

103. In the current case, both Defendants have acted in a tortious manner. Defendant 1 is liable for their own actions and through the theory of respondent superior liability, Defendant 1 is liable for Defendant 2's actions.

## PRAYER FOR RELIEF

Plaintiff, Mr. Miles, hereby incorporates all preceding paragraphs as if fully set forth with particularity herein.

**WHEREFORE**, Mr. Miles, prays this Court:

1. Declare Defendants' conduct is in violation of Mr. Miles' rights;
2. Award Mr. Miles compensatory damages in such amount as shall be proven at trial for his economic, personal and other losses;

3. Award Mr. Miles damages in an amount to be proven at trial for humiliation, embarrassment, apprehension about his future, and emotional stress, which the Defendants caused Mr. Miles by their illegal, discriminatory, and wrongful acts towards him;

4. Award Mr. Miles costs, interest, and attorneys' fees pursuant to KRS § 344; and

5. Grant him such further relief as this Court may deem just and proper.

## **JURY DEMAND**

Plaintiff, Mr. Miles, demands a jury to try all issues triable by jury.

Respectfully submitted,

/s/ Samuel G. Hayward Jr.
Samuel G. Hayward Jr.
Tilford, Dobbins, & Schmidt, PLLC
401 W. Main Street, Suite 1400
Louisville, Kentucky 40212
(502) 366-6456
sghayw@gmail.com

## VERIFICATION

I, Justin Miles, have read the foregoing and the matters of fact therein set forth are true, as I verily believe.

Executed in Jefferson County, Kentucky, this 20 day of February, 2023.

*Justin Miles*

COMMONWEALTH OF KENTUCKY )
                                                ) ss
COUNTY OF JEFFERSON            )

Sworn, subscribed to, and acknowledged before me, a Notary Public, within and for the Commonwealth of Kentucky at large, by Monica Loggans this 20th day of Feb., 2023.

My Commission Expires: 8-26-26
Notary Id: KYNP57907



_____
NOTARY PUBLIC, KY STATE AT LARGE